# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

No. 10 Civ. 5119 (RJS)

WINSTON ANTHONY PEARSON,

Plaintiff,

VERSUS

MERRILL LYNCH AND BANK OF AMERICA,

Defendants.

OPINION AND ORDER
March 22, 2012

RICHARD J. SULLIVAN, District Judge:

Plaintiff Winston Anthony Pearson, proceeding *pro se*, brings this action against his former employer pursuant to federal, state, and local civil rights laws, alleging wrongful termination on the basis of racial and gender discrimination. Before the Court is Defendants' motion for summary judgment. For the reasons that follow, Defendants' motion is granted.

I. BACKGROUND

A. Facts

Merrill Lynch hired Plaintiff as an administrative assistant in the Energy & Power Group of the Investment Banking Department ("Energy & Power Group") in June of 1999.[1] (Decl. of Izabel P. McDonald, dated June 30, 2011, Doc. No. 18, ("McDonald Decl."), Ex. A.) Plaintiff supported bankers within the Energy & Power Group in New York. (*Id.* at Ex. O (Deposition of Winston Pearson on April 27, 2011 ("Pearson Dep.") at 85-89).)

During Plaintiff's tenure at Merrill Lynch, the Investment Bank used two methods for evaluating employees. "Cross evaluations" were completed by individuals chosen by the

---

[1] The facts are taken from Defendants' Local Rule 56.1 statement as well as the declarations and exhibits attached thereto. Plaintiff failed to submit his own 56.1 statement, despite being directed to do so. Accordingly, the facts set forth in Defendant's 56.1 statement ("Def. 56.1") are deemed admitted. *See* Local Civ. R. 56.1(c); *see also Gitlow v. United States*, 319 F. Supp. 2d 478, 480 (S.D.N.Y. 2004).

person being evaluated, including peers (Pearson Dep. 322:25-24:13), whereas "performance evaluations" were completed by the Business Manager, with input from the bankers to whom the assistant was assigned (*id.* at 130:24-132:3). In 2008, Christine Del Corsano ("Del Corsano") replaced Tracy Baskin ("Baskin") as the Business Manager for the Energy & Power Group. (Aff. of Christine Del Corsano, dated June 22, 2011, Doc. No. 20, ("Del Corsano Aff."), ¶ 3.) Del Corsano functioned as Business Manager for both the Healthcare and the Energy & Power Groups from November 2008 through July 2009. (*Id.* ¶ 4.) From January 2002 to June 2010, Parker Weil ("Weil") was Managing Director of the Energy & Power Group. (Aff. of Parker Weil, dated June 22, 2011, Doc. No. 21, ("Weil Aff."), ¶ 2.) Although it is unclear whether Weil was ever involved in rating the administrative assistants, Del Corsano solicited Weil's opinions about the Energy & Power Group's administrative assistants in early 2009. (Del Corsano Aff. ¶ 24.)

When Plaintiff first started at Merrill Lynch, the year-end performance scale was not numeric. Instead, it included three categories: "Achieved with Distinction" or AD, which was the highest rating; "Achieved Results" or AR, which was the average rating; and "Inconsistently Achieved" or IA, which was the lowest ranking. (Aff. of Ann-Marie O'Reilly, dated June 27, 2011, Doc. No. 19, ("O'Reilly Aff."), at ¶ 3.) Plaintiff rated "AD" in 2003 and 2004. (Pearson Dep. 109:10-11, 134:3-17.) In 2005, the rating scale changed from three to five categories: "Exceeds in all" ("5"); "Outstanding Performer" ("4"); High Performer ("3"); "Solid Performer" ("2"); and "Challenged Performer" ("1"). (O'Reilly Aff. ¶ 4.) Starting in 2005, and in each year until his termination, Plaintiff was rated "High Performer," or a "3." (McDonald Decl. Exs. C, D, E, F.) Defendants insist that Plaintiff was never rated a "1" (Weil Aff. ¶ 12), but Plaintiff surmises that because he received a "3" in 2005, when at the mid-year review he had received an "AD," he must have been rated "1" at the 2005 year-end review (Pl. Mem. at 5).[2]

Plaintiff's performance reviews reflected some criticism about his attendance, punctuality, "proactiveness," and attention to detail. (Def. Mem. at 5; Pearson Dep. 184:22-85:18.) Plaintiff claims that these comments were "made just to find something negative to put on plaintiff's performance report since no fault could be found about plaintiff's work," and contends that his offers to help other assistants were rejected when other assistants thought he was trying to take their jobs. (Pl. Mem. at 2-3.). Additionally, Plaintiff submitted affidavits and comments from bankers he assisted, which portray Plaintiff as an exceptional assistant. (*See* Aff. of John Thorndike, dated July 28, 2011, Doc. No. 37, at 27; Aff. of David Sagalov, dated August 15, 2011, Doc. No. 37, at 30; Pl. Mem. Ex. 4.)

In early 2009, Bank of America acquired Merrill Lynch, and promptly began a firm-wide staff reduction and reorganization. (Weil Aff. ¶ 4; O'Reilly Aff. ¶ 5.) Bank of America directed Del Corsano to make decisions about which personnel would be retained from Merrill Lynch. (Del Corsano Aff. ¶ 7.) Del Corsano and her counterpart from Bank of America decided to staff the Energy & Power Group in New York with nine administrative assistants – five assistants from Merrill Lynch and four assistants from

---

[2] References to the parties' submissions are as follows: Defendant's memorandum of law in support of its motion for summary judgment ("Def. Mem."); Plaintiff's brief in opposition to Defendant's motion ("Pl. Mem."); Defendant's reply memorandum ("Def. Reply"). Because Plaintiff's memorandum does not have page numbers, the Court refers to the page numbers assigned to the document on ECF. (Doc. No. 37.)

Bank of America. (*Id.* ¶ 16.) Bank of America senior management directed Investment Banking to retain the strongest-performing administrative assistants from both Bank of America and Merrill Lynch. (*Id.* ¶ 9; O'Reilly Aff. ¶ 6; Weil Aff. ¶ 5.) To do so, Del Corsano looked first to the 2008 year-end performance ratings of the administrative assistants across all the groups within Investment Banking, including Energy & Power, Human Resources, and Healthcare. (Del Corsano Aff. ¶¶ 17, 28, 29; O'Reilly Aff. ¶ 7.) Del Corsano also sought the opinions of Weil and Estrellita Kierulf-Buendia, the Administrative Coordinator for the Energy & Power Group. (Del Corsano Aff. ¶ 24.) In general, administrative assistants who received a rating of "4" or "5" in 2008 were retained, and the remaining positions were filled by the strongest performing assistants who were rated "3." (Del Corsano Aff. ¶ 18; O'Reilly Aff. ¶ 8, 9.)

The following five administrative assistants worked within the Energy & Power Group in late 2008: Pamela McClary ("McClary," a Caucasian female), Malvira Morrison ("Morrison," an African-American female), Plaintiff (an African-American male), Ana Silva ("Silva," a Hispanic female), and Emily Wall ("Wall," a Caucasian female). (Del Corsano Aff. ¶ 8.) Wall's rating for 2008 was "5." (McDonald Decl. Ex. G.) Both McClary and Silva were rated "4" in 2008. (*Id.* at Exs. H, I.) Plaintiff and Morrison were both rated "3" in 2008. (*Id.* at Exs. F, J.) In early 2009, Wall, who was Weil's assistant, decided to leave the firm. (Del Corsano Aff. ¶ 32; Weil Aff. ¶ 9.) After Victor Nesi, the former head of Investment Banking, announced his retirement, Weil expressed an interest in working with Nesi's assistant, Andrea Bassett ("Bassett"), a Caucasian female. (Del Corsano Aff. ¶ 10; Weil Aff. ¶ 6; Pl. Mem. Ex. 20.) Bassett was rated "5" in 2008 (McDonald Decl. Ex. N), and became Weil's administrative assistant in February or March 2009. (Weil Aff. ¶ 8.)

While Weil and Bassett were working out their arrangement, Weil asked Bassett if she knew any other assistants "who may need a spot." (Pl. Mem. Ex. 20.) Bassett forwarded Weil information concerning Sarah Taylor. (*Id.*) However, Sarah Taylor ultimately was not offered a position as an administrative assistant in the Energy & Power Group. (Weil Aff. ¶ 11.)

In connection with the reduction in staff, Del Corsano recommended that Bassett, McClary, and Silva remain as administrative assistants in the Energy & Power Group. (Del Corsano Aff. ¶ 33.) To fill the remaining two positions, Del Corsano recommended that Robin Kelley ("Kelley") and Diane Dunn-Broadie ("Dunn-Broadie") join the Group. (*Id.*) Kelley, an African-American female, was rated "4" in 2008 and worked in the Human Resources group of Investment Banking. (Del Corsano Aff. ¶ 28; McDonald Decl. Ex. L.) Dunn-Broadie, an African-American female, received a "3" in 2008 and worked in the Healthcare group of Investment Banking. (Del Corsano Aff. ¶ 29; McDonald Decl. Ex. M.) As Dunn-Broadie's manager in the Healthcare group, Del Corsano was familiar with her work and performance, which Del Corsano considered to be very good. (Del Corsano Aff. ¶ 30.) Additionally, Del Corsano considered the Healthcare Group to be more competitive than the Energy & Power Group. (*Id.* ¶ 31.) Between Dunn-Broadie, Plaintiff, and Morrison, who were all rated "3" in 2008, Del Corsano considered Dunn-Broadie to be the best performer, and she was therefore retained in the Energy & Power Group. (*Id.* ¶ 38.)

Thus, the five Merrill Lynch administrative assistants who were retained in the newly configured Energy & Power Group were Bassett, McClary, Silva, Kelley, and

3

Dunn-Broadie. Before and after the acquisition by Bank of America, there were a total of nine administrative assistants in the Energy & Power Group of Investment Banking, comprised of seven female assistants and two male assistants, and four African American, three Hispanic, and two Caucasian assistants. (Del Corsano Aff. ¶¶ 40, 41.)

In March 2009, Plaintiff was informed by letter that his employment would be terminated. (O'Reilly Aff. ¶ 12; Pearson Dep. at 276:17-19.)

### B. Procedural History

Plaintiff filed a charge of discrimination on August 10, 2009 with the Equal Employment Opportunity Commission ("EEOC"), alleging gender and race discrimination as well as age discrimination. (Compl., Doc. No. 1.) On March 31, 2010, the EEOC sent Plaintiff a letter stating that "the Commission is unable to conclude that the information obtained establishes a violation of Title VII or the ADEA [and therefore] this charge will be dismissed." (Id.) The letter also informed Plaintiff of his right to bring suit within 90 days. (Id.) The letter further noted that:

> Evidence that the individuals responsible for your layoff were male and of comparable age to you, tended to negate an inference that this decision was based on your sex or age. . . . Evidence that [the employees who replaced you] were African-American did not give rise to an inference that the Respondent's conduct was motivated by your race. Therefore, even if there was evidence to indicate that employees who were retained had poorer performance ratings, there was nothing in the record to suggest that the Respondent's stated reason for [your termination was a] pretext for sex, age or race discrimination.

(Id.)

Plaintiff initiated the present suit on July 2, 2010, alleging unlawful termination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq., and the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code § 8-101 et seq.[3] On June 30, 2011, Defendants moved for summary judgment against Plaintiff. (Doc. Nos. 17, 25.) As required by Local Rule 56.2, Defendants served Plaintiff with a "Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment" in addition to its moving papers, which advised Plaintiff of his obligations in responding to a summary judgment motion. (Doc. No. 27.) On September 22, 2011, the Court received a courtesy copy of Plaintiff's opposition to Defendants' motion for summary judgment.[4] The motion was fully submitted as of October 7, 2011.

### II. STANDARD OF REVIEW

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, a court may not grant a motion for summary judgment unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[3] Plaintiff's Complaint alleges only unlawful termination based on race and gender discrimination, and does not include allegations of age discrimination.

[4] Although dated September 19, 2011, Plaintiff's opposition brief was not filed via ECF until February 14, 2012. (Doc. No. 37.) As noted above, Plaintiff failed to include a 56.1 statement with his opposition brief.

4

Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that it is entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The court "is not to weigh evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks omitted); *accord Anderson*, 477 U.S. at 248. As such, "if there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted).

"[B]ecause direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence," courts must exercise "an extra measure of caution" in determining whether to grant summary judgment in cases involving allegations of employment discrimination. *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006). Nonetheless, "[s]ummary judgment is appropriate even in discrimination cases." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (internal citations and quotation marks omitted). Thus, "a plaintiff [in a discrimination case] must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). The ultimate test remains "whether the evidence can reasonably support a verdict in plaintiff's favor." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000). Because Plaintiff appears *pro se* in this matter, the Court construes his submissions liberally and interprets them "to raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (internal quotation marks omitted)).

### III. DISCUSSION

The thrust of Plaintiff's argument appears to be that his termination was unlawful because it was based on his rating, which was the product of discriminatory animus. Defendants maintain that Plaintiff has not put forth evidence to support a *prima facie* case, and that even if he had, Plaintiff nevertheless cannot prove that Defendants' proffered legitimate non-discriminatory reason for Plaintiff's termination was a pretext for discrimination.

As noted above, Plaintiff alleges that he was wrongfully terminated on the basis of his race and gender in violation of Title VII, the NYSHRL, and the NYCHRL. The relevant statutory text states: "It shall be an unlawful employment practice for an employer to . . . discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The state and city provisions Plaintiff invokes provide the same protection against unlawful termination on the basis of protected traits. N.Y. Exec. Law §§ 290 *et seq.* (McKinney 2009); N.Y.C. Admin. Code §§ 8-101 *et seq.*

#### A. Standard

Because Plaintiff has not presented any direct evidence of discriminatory animus,[5] the

---

[5] The Second Circuit has noted that "direct evidence" in this sense would roughly equate to a "smoking gun" indicating that a plaintiff's firing was discriminatory, and that such evidence is typically unavailable in employment discrimination cases. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 76 (2d Cir. 2001). The Court finds no such evidence in the record in the instant case.

5

Court will review Plaintiff's unlawful termination claim under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). The Court will examine Plaintiff's state and city law claims under the same framework, as "[t]he standards for liability under [the NYSHRL and NYCHRL] are the same as those under the equivalent federal antidiscrimination laws." *Ferraro v. Kellwood Co.*, 440 F.3d 96, 99 (2d Cir. 2006).

In the first step of this framework, the employee bears the burden of setting forth evidence sufficient to support a *prima facie* case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. To do so, a plaintiff must show (1) membership in a protected class, (2) that he was performing his duties satisfactorily, (3) that he was discharged, and (4) that his discharge occurred under circumstances that give rise to an inference of discrimination on the basis of his membership in that class. *See McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997).

If the plaintiff is able to establish a *prima facie* case, the burden then shifts to the defendant to produce evidence that the adverse action was taken for a "legitimate non-discriminatory reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981) (internal quotation marks omitted). At this step, however, a defendant "need not persuade the court that it was actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254.

Finally, if the defendant articulates a nondiscriminatory explanation for the action, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *Burdine*, 450 U.S. at 253). To create a material issue of fact and defeat a motion for summary judgment, however, a plaintiff is required to produce "not simply *some* evidence, but sufficient evidence to support a rational finding that the legitimate nondiscriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action]." *Weinstock*, 224 F.3d at 42 (2d Cir. 2000) (internal quotation marks omitted, emphasis added). In determining whether the articulated reason for the action is a pretext, "a fact-finder need not, and indeed should not, evaluate whether a defendant's stated purpose is unwise or unreasonable. Rather, the inquiry is directed toward determining whether the articulated purpose is the actual purpose for the challenged employment-related action." *DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 170-71 (2d Cir. 1993). At all times, the plaintiff has the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against him on the basis of a protected characteristic. *Hicks*, 509 U.S. at 510-11.

Applying the *McDonnell Douglas* standard to the case before it, the Court finds that Plaintiff has failed to adduce sufficient evidence to support his *prima facie* case of race and gender discrimination, and cannot show that Defendants' proffered non-discriminatory reasons for his termination were pretextual.

### A. *Prima Facie* Case

Although the burden of establishing a *prima facie* case is *de minimis*, *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 38 (2d Cir. 1994), Plaintiff has failed to meet that burden. That Plaintiff is a member of a

protected class, performed his duties satisfactorily, and suffered an adverse employment action when he was terminated are not in dispute. Rather, Defendants argue – and the Court agrees – that Plaintiff has failed to show that the circumstances of his termination give rise to an inference of discrimination.

1. Racial Discrimination

Plaintiff has alleged that he was terminated because of his rating, and that his rating was the result of racism by those responsible for ranking him. However, Plaintiff has not pointed to any evidence in the record demonstrating that the individuals responsible for Plaintiff's ranking or termination harbored any discriminatory animus towards Plaintiff. Rather, Plaintiff's allegations of discrimination rest on his opinion that he should have been given a higher rating (Pl. Mem. at 13-14); his allegation that Weil is racist (*id.* at 10); his conclusory statement that "Weil rated the two African Americans '3' so that they could be terminated" (*id.*); his conclusion that Weil's e-mail to Bassett asking if anyone else needed a spot was discriminatory (*id.* at 11); his unsupported observation that "it appears that it had been agreed on that African Americans would receive a '3' rating regardless of their performances" (*id.* at 8); and his assertion that Del Corsano was "biased" and "incapable of tendering a fair and impartial decision" about which Merrill Lynch administrative assistants to retain (*id.* at 12).

Plaintiff asserts that he "topped the rankings of his group with the highest possible ratings . . . until mid-2005 . . . . [B]ut by year-end [2005] the Plaintiff was rated a '3' . . . . It was obvious racial and gender discrimination." (Pl. Mem. at 13-14.) These assertions appear to be primarily founded on Plaintiff's personal belief that he deserved a higher performance ranking. (*Id.* 153:4-18.)

Without more, however, Plaintiff's disagreement with his managers' assessment of his performance simply does not evidence discriminatory intent. *See Griffin v. Ambika Corp.*, 103 F. Supp. 2d 297, 308 (S.D.N.Y. 2000) ("[A] plaintiff's personal belief that she was qualified for a position is insufficient to demonstrate that an adverse action was discriminatory."); *Gonzalez v. Allied Barton Sec. Servs.*, 08 Civ. 9291 (RJS) (RLE), 2010 WL 3766964, at *7 (S.D.N.Y. Sept. 7, 2010) ("[Plaintiff's] subjective opinion is insufficient proof of racial or sex-based animus."); *Kumaga v. N.Y.C. Sch. Constr. Auth.*, No. 127817/02, 2010 WL 1444513, at *12 (N.Y. Sup. Ct. Apr. 2, 2010) ("Plaintiffs' estimations of their own qualifications do not raise an inference of discrimination, absent evidence that their credentials were so superior . . . that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate over the plaintiff for the job in question." (internal quotation marks and citations omitted)).

Furthermore, Plaintiff's allegations that Weil is a racist and that Weil discriminated against him by allegedly giving him low ratings from 2005 to 2008 and by bringing Bassett into the group, are either not supported by the record or do not lead to an inference of racial or gender animus. (Pearson Dep. 218-24.) Plaintiff's accusation that Weil is a racist appears to be based on Plaintiff's allegation that Weil did not speak to Plaintiff until after Plaintiff "rescued a multi-million dollar deal" (Pl. Mem. at 14), at which time Weil was "embarrassed he had to ask an African American to get the deal back" (Pearson Dep. 142:5-6). But Plaintiff simply cannot tie Weil's lack of communication or purported embarrassment to Plaintiff's race. In fact, Plaintiff admits that Weil spoke with other African-American assistants in the group (*id.* at 143:3-13; 223:10-25), and concedes that Weil never made any race-based comments (*id.* at 224:16-18). Plaintiff

7

accuses Weil of being a racist, but has not put forth evidence to support his claim.

Even if Plaintiff could demonstrate that Weil was a racist, Plaintiff has not proven that Weil was responsible for Plaintiff's ratings, in 2008 or any other year. Plaintiff's claims that Weil gave Plaintiff a "1" rating in 2005 and low rankings from 2006 to 2008 because of his race are unsupported by the record. For one thing, it is unclear whether Weil *ever* ranked Plaintiff,[6] and, at any rate, Weil testified that he never rated Plaintiff a "1" at any point during Plaintiff's tenure. (Weil Decl. ¶ 12.) Plaintiff does not point to evidence indicating the contrary, and indeed, Plaintiff acknowledges that bankers did not typically rate administrative assistants. (Pearson Dep. 263:11-15.) Furthermore, Plaintiff's claims that Weil rated both Plaintiff and Morrison as "3" in order to ensure that the two African American administrative assistants would be terminated is not supported by the facts. As discussed above, it is not clear that Weil even rated Plaintiff in 2008 (*id.* at 333:2-34:21), and even so, a "3" rating was not necessarily sufficient to ensure termination, as Dunn-Broadie was given a "3" rating and was nonetheless retained.

Additionally, Weil bringing on Bassett to serve as his administrative assistant does not evidence discrimination towards Plaintiff. For one thing, Plaintiff never served as Weil's administrative assistant, and Bassett did not replace Plaintiff. Plaintiff also acknowledged that neither gender nor race had anything to do with Weil hiring Bassett to replace Wall. (Pearson Dep. 207:10-208:6.) Weil's email to Bassett asking if Bassett could recommend any other administrative assistants also falls short of showing discriminatory animus towards Plaintiff. Weil's email not only makes no mention of race or gender, but the individual whom Bassett recommended was not even offered a position with the Energy & Power Group. Under these facts, Weil's email to Bassett does not support an inference of racial discrimination or animus.

Furthermore, Plaintiff's wholly conclusory allegation that "it appears that it had been agreed on that African Americans would receive a '3' rating regardless of their performances" (Pl. Mem. at 8) is belied by the evidence in the record. Plaintiff supports his theory by pointing to the "3" ratings of Morrison and Dunn-Broadie, as well as his own "3" rating. But by Plaintiff's own admission, Kelley, an African-American female, was rated a "4," which demonstrates that not all African-American administrative assistants were rated "3." (*Id.*) Plaintiff suggests that Kelley was an "unusual exception" (*id.*), but offers no evidence that would lead to the conclusion that Kelley's higher ranking was an exception to Defendants' alleged calculated plan to rate African-American administrative assistants as "3."

Finally, Plaintiff's assertion that Del Corsano was "biased" and "incapable of tendering a fair and impartial decision" about which Merrill Lynch administrative assistants to retain is insufficient to prove discriminatory intent. (Pl. Mem. at 12.) Even if Del Corsano was biased in selecting Dunn-Broadie over Plaintiff, under the law in this Circuit, showing favoritism toward workers with whom a decisionmaker is familiar does not amount to discrimination based on a protected category. *Harris v. N.Y.C. Dep't of Homeless Servs.*, No. 97 Civ. 0432 (SAS), 1998 WL 205334, at *7 (S.D.N.Y. Apr. 28, 1998), *aff'd*, No. 98-7721, 1999 WL 314158 (2d Cir. 1999). Plaintiff's disagreement with

---

[6] Plaintiff acknowledges that bankers did not typically rank administrative assistants (Pearson Dep. 263:11-15), although Del Corsano evidently solicited Weil's opinion about the Energy & Power Group's administrative assistants in early 2009 in connection with the firm-wide reduction in force (Del Corsano Aff. ¶ 24).

8

Del Corsano's preference for Dunn-Broadie over Plaintiff simply does not prove discriminatory animus. *See, e.g., Griffin*, 103 F. Supp. 2d at 308. Moreover, it bears repeating that Dunn-Broadie, like Plaintiff, is African-American, and therefore Del Corsano's decision to retain Dunn-Broadie over Plaintiff could not have been based on racial discrimination.

In short, Plaintiff's allegation that his ratings – on which his termination was based – were discriminatory simply is not supported by the evidence in the record. Although he repeatedly asserts that "[r]acism is blatantly obvious in those ratings" (Pl. Mem. at 14, 17, 18), such conclusory statements will not support an inference of discriminatory intent. Likewise, Plaintiff's disagreement with his rating and termination does not evidence discriminatory bias. In fact, even if Plaintiff were to demonstrate that Defendants' decision to terminate him was incorrect or improper – which he has not – he still has not carried his burden of showing that Defendants' decision was the result of unlawful discriminatory animus.

Before and after the reorganization of the Energy & Power Group in New York, the racial and gender profiles of the administrative assistants in the group remained the same. Both before and after the reorganization, the Energy & Power Group had seven female and two male administrative assistants, of which four were African-American, three Hispanic, and two Caucasian. (Del Corsano Aff. ¶¶ 40, 41.) Furthermore, Kelley and Dunn-Broadie, the two individuals who replaced Plaintiff and Morrison as administrative assistants in the Energy & Power Group, are both African-American. An inference of discriminatory intent does not exist when the plaintiff and his or her replacement are of the same protected category. *Pearson v. The Unification Theological Seminary*, 785 F. Supp. 2d 141, 155 (S.D.N.Y. 2011) (stating that "it is impossible for a reasonable jury to find that [defendant] took [an adverse employment action] as a result of [plaintiff's] race" when the individual who replaced plaintiff was also African-American); *Randolph v. CIBC World Mkts.*, No. 01 Civ. 11589 (RWS), 2005 WL 704804, at *12 (S.D.N.Y. Mar. 29, 2005) (holding that plaintiff failed to establish a causal link between his termination and his race when plaintiff was replaced by an individual in the same protected class). The fact that Plaintiff was replaced by an African American, and that the gender demographics of the administrative assistants in the Energy & Power Group remained the same before and after the reorganization, tend to indicate that discriminatory intent was absent from the decision to terminate Plaintiff.

Plaintiff's counterarguments to the contrary are not supported by the record. First, as discussed above, Plaintiff's argument that "it appears that it had been agreed on that African Americans would receive a '3' rating regardless of their performances" is belied by Kelley's "4" rating. (Pl. Mem. at 8.) Second, Plaintiff's assertion that "[i]t was only to avoid possible litigation that two other African Americans were brought into the group" is, once again, wholly conclusory and unsupported by evidence from the record. (*Id.* at 19.) Absent evidence to support such conclusory statements, the Court cannot agree that Plaintiff was "let go because of racism." (*Id.*)

2. Gender Discrimination

The evidence also falls short of demonstrating that Defendants' decision to terminate Plaintiff's employment was based on his gender. Although Plaintiff claims that Del Corsano and O'Reilly are sexist because the individuals they brought into the Energy & Power Group are women, Plaintiff concedes that neither Del Corsano nor

9

O'Reilly ever made an offensive gender-based comment. (Pearson Dep. 230:25-231:5, 244:6-45:14, 255:6-13.)

Plaintiff backs his claim of gender discrimination by noting that he was the only male administrative assistant in the Energy & Power Group. However, this, without more, will not support an inference of discrimination. *See Watson v. Arts & Entm't Television Network*, No. 04 Civ. 1932 (HBP), 2008 WL 793596, at *17 (S.D.N.Y. Mar. 26, 2008) (finding that plaintiff's suggestion that discrimination could be inferred because she was the only African-American in her department was insufficient to establish discrimination); *Anderson v. Hertz Corp.*, 507 F. Supp. 2d 320, 329 (S.D.N.Y. 2007) (holding that "[t]he fact that Plaintiff was the only African-American Station Manager" did not "supply evidence sufficient for Plaintiff to establish a *prima facie* case of discrimination" because "racial imbalance" alone is insufficient to demonstrate discrimination). Plaintiff's own testimony acknowledges that he was employed in a "female-dominated field." (Pearson Dep. 292:21-24.) As such, his status as the sole male employee in a five-person group has no significant relevance to his allegation of gender discrimination.

Plaintiff argues that Del Corsano was wrong in rating Dunn-Broadie a stronger performer than Plaintiff merely because Dunn-Broadie worked in the more competitive Healthcare Group, asserting that "[t]his was the personal opinion of Del Corsano, and not fact." (Pl. Mem. at 19.) However, this does nothing to advance his claim of discriminatory intent. As discussed above, preference for an employee with whom the decisionmaker is familiar is not evidence of discriminatory animus. *See Harris*, 1998 WL 205334, at *7 (concluding that favoritism based on friendship or familiarity does not suggest discriminatory animus). Furthermore, even if Del Corsano was incorrect in her assessment of the Healthcare Group as being more competitive than the Energy & Power Group, or of Dunn-Broadie as being a better performer than Plaintiff, Plaintiff still has not demonstrated that the decision to terminate him was motivated by hostility based on Plaintiff's gender. Without that, the Court is unable to conclude that Plaintiff has carried his burden of establishing a *prima facie* case that his termination was caused by discriminatory animus.[7]

### B. Pretext

Nevertheless, even if Plaintiff had been able to establish a *prima facie* claim of discrimination relating to his termination, he would be unable to demonstrate that Defendants' proffered reason for his termination – namely, the reduction in force in the Energy & Power Group following Merrill Lynch's acquisition by Bank of America – was pretextual.

After Bank of America acquired Merrill Lynch in 2009, it began a firm-wide reduction in force. (Weil Decl. ¶ 4.) As part of that initiative, Bank of America directed Investment Banking to retain the strongest administrative assistants from both Bank of America and Merrill Lynch. (O'Reilly Decl. ¶ 6; Weil Decl. ¶ 5; Del Corsano Decl. ¶ 9.) The New York Energy & Power Group was

---

[7] The Court must analyze Plaintiff's claims under the NYCHRL separately, acknowledging the "distinctive language, purposes, and method of analysis [of that statute requires] an analysis more stringent than that called for under either Title VII or the [NYSHRL]." *Vargas v. Morgan Stanley*, 438 F. App'x 7, 10 (2d Cir. 2011) (quoting *Williams v. N.Y.C. Housing Auth.*, 872 N.Y.S.2d 27, 30-31 (N.Y. App. Div. 2009)). Even under this broader approach, Plaintiff's claims fail for the same reasons that his claims fail under federal and state law. Simply put, Plaintiff's pleadings are wholly bereft of any evidence that would lead a reasonable fact finder to conclude that his termination was motivated by discriminatory intent.

10

allotted nine administrative assistants, and Bank of America decided to staff five of the available positions with administrative assistants from Merrill Lynch. (Del Corsano Decl. ¶ 16.) Business managers from Merrill Lynch and Bank of America decided that they would retain administrative assistants who had received a rating of "4" or "5" on their 2008 year-end performance review, and would fill the remaining available positions with the strongest performing administrative assistants who received a "3" rating in 2008. (*Id.* ¶ 18.)

At the time of the reduction in force, the administrative assistants for the Energy & Power Group were Plaintiff, McClary, Morrison, Silva, and Wall. (*Id.* ¶ 8.) Wall, Silva, and McClary were all rated either "5" or "4" in 2008, and were therefore obvious candidates for retention. (*Id.* ¶¶ 19-21; McDonald Decl. Exs. G, H, I.) Wall decided to leave the firm, however, and was replaced by Bassett, the administrative assistant to an outgoing banker, who had also been rated "5" in 2008. (*Id.* ¶¶ 32, 34, McDonald Decl. Ex. N.) One of the two remaining positions was filled by Kelley, who had been rated a "4" in 2008. (*Id.* ¶ 37; McDonald Decl. Ex. L.)

Between Plaintiff, Morrison, and Dunn-Broadie, Defendants chose Dunn-Broadie to fill the remaining vacancy. Although Dunn-Broadie was rated "3," like Plaintiff and Morrison, she worked in the Healthcare Group, which Del Corsano considered to be a more competitive group, and Del Corsano believed Dunn-Broadie to be a better performer than either Plaintiff or Morrison. (*Id.* ¶¶ 38, 29-31.) Indeed, although Plaintiff performed his duties in a satisfactory manner, the record indicates that during the years 2005-2008, Plaintiff received negative feedback concerning his attendance, punctuality, proactiveness, and attention to detail. (McDonald Decl. Ex. C, D, E, F.)

Against this undisputed record, Plaintiff simply has not demonstrated that Defendants' proffered reasons for terminating Plaintiff are pretextual. Although Plaintiff vehemently disagrees with Defendants' assessment of his performance and the decision to select him as one of the two weakest administrative assistants of the group, this does not show pretext. Indeed, a court "does not sit as a super-personnel department" to review employers' decisions. *Martin v. MTA Bridges & Tunnels*, 610 F. Supp. 2d 238, 251 (S.D.N.Y. 2009).

Furthermore, even if Plaintiff could show that Defendants' rating was incorrect or improper, which he has not, this would be immaterial as long as the decision to terminate Plaintiff was not based on discriminatory animus. *Lowe v. Commack Union Free Sch. Dist.*, 886 F.2d 1364, 1375 (2d Cir. 1989). Plaintiff may not merely allege discrimination; he "must provide the Court with evidence of such discrimination." *Weiss v. Morgan Stanley Inv. Mgmt.*, No. 05 Civ. 3310 (GBD), 2008 WL 821813, at *5-6 (S.D.N.Y. Mar. 27, 2008) (internal quotation marks omitted). Plaintiff's conclusory allegations are unsupported by evidence that "reasonably supports a finding of prohibited discrimination" with regard to his selection for termination. *Bernard v. J.P. Morgan Chase Bank N.A.*, No. 08 Civ. 4784 (THK), 2010 WL 423102, at *7, 11 (S.D.N.Y. Feb. 5, 2010). For that reason, Plaintiff's claim of unlawful termination must fail.

C. Plaintiff's Other Arguments

Plaintiff raises several other arguments in his opposition brief, which will not be entertained by the Court. In his opposition brief, Plaintiff makes vague and unsupported claims that he was discriminated against since 2005 and that he was discriminated against with regard to his bonus award in 2005. (Pl. Mem. at 13-14.) Neither of these claims was

raised in the EEOC charge, or in the Complaint in this action. Therefore, the Court will not consider these allegations. *See Chen v. Citigroup Inv., Inc.*, No. 03 Civ. 6612 (GBD), 2004 WL 2848539, at *2 (S.D.N.Y. Dec. 9, 2004) ("Only those claims specifically raised or reasonably related to the charges brought before the administrative body may be addressed by the district court.").

Plaintiff also accuses Defendants of submitting falsified documents in connection with their motion for summary judgment. (Pl. Mem. at 22-24.) Defendants have denied this serious accusation and have provided the affidavit of Francesca Parrino indicating that the disputed performance reviews are accurate copies of records that were maintained by Merrill Lynch before the firm was acquired by Bank of America in 2009 and then transferred to Bank of America's archival systems after the acquisition. (Aff. of Francesca Parrino, dated October 5, 2011, Doc. No. 33, ¶ 4.) Absent compelling evidence to the contrary, the Court will not presume the falsity of those documents, particularly where Plaintiff has provided no evidence whatsoever in support of his assertion.

Accordingly, Defendants' motion for summary judgment is granted with respect to Plaintiff's claims for employment discrimination.

## IV. CONCLUSION

The federal, state, and local discrimination laws implicated in this case exist in order to ensure that individuals are not discriminated against based on their membership in a protected class, not merely to redress any action which a plaintiff perceives as being unfair. Here, although Plaintiff undoubtedly feels that his rating did not reflect his talent and ability as an administrative assistant, he has advanced no evidence that any adverse action was undertaken because of his membership in a protected class.

For the foregoing reasons, Defendants' motion for summary judgment is granted. The Clerk of Court is respectfully directed to terminate the motions located at Doc. Nos. 17 and 25 and to close this case.

SO ORDERED.

_____
RICHARD J. SULLIVAN
United States District Judge

Dated: March 22, 2012
New York, New York

\* \* \*

Plaintiff Winston Anthony Pearson is proceeding *pro se*.

Defendants are represented by Izabel Pasagian McDonald and Kevin Bruce Leblang of Kramer Levin Naftalis & Frankel, LLP, 1177 Avenue of the Americas, New York, New York, 10036.

12